(96 South. 805)

(No. 25861.)

## STATE v. SCARA et al.

(April 30, 1923. Rehearing Denied June 4, 1923.)

*(Syllabus by Editorial Staff.)*

Criminal law ⚖➡1170½ (3)—Question to which objection sustained as to number of times defendant had been arrested held not prejudicial.

Question asked witness as to number of times one defendant was arrested during 1922, to which the court sustained objection, was not injurious to either defendant, as it cannot be assumed that jurors would be influenced by mere asking thereof.

Appeal from Criminal District Court, Parish of Orleans; Frank T. Echezabal, Judge.

Frank Scara and another were convicted of an offense, and they appeal. Affirmed.

Theodore H. McGiehan, George P. Nosacka, and Woodville & Woodville, all of New Orleans, for appellants.

A. V. Coco, Atty. Gen., and Robert H. Marr, Dist. Atty., of New Orleans (T. S. Walmsley, of New Orleans, of counsel), for the State.

ROGERS, J. On an information charging them jointly in one count with breaking and entering in the nighttime with intent to steal and with grand larceny, the defendants were found guilty of entering in the nighttime with intent to steal, not breaking. They were each sentenced to be imprisoned at hard labor in the state penitentiary for not less than four and not more than five years, and to pay a fine of $1,000, and, in default of the payment of the fine, to imprisonment in the parish prison of the parish of Orleans for one year, beginning at the expiration of their terms in the penitentiary.

During the course of the trial a sister of defendant Scara, called in his behalf for the purpose of establishing an alibi, testified on direct examination that her brother had been arrested on the next day after the commission of the crime charged, because his arrest had been effected as he was leaving a prize fight which he had attended the night immediately following the alleged offense; that on the night of the alleged offense, which was the night immediately preceding his arrest, he had been in her company at places other than the place at which said offense was alleged to have been committed by him, and that she fixed in her memory the night of the alleged crime by associating it with the night of her brother's arrest while leaving the prize fight. On cross-examination the state's attorney propounded to the witness the following question: .

"Do you know whether or not your brother was arrested in 1922 more than once?"

The question was objected to, and, upon the overruling of the objection and the request of defendant's counsel to hold the ruling in abeyance, the jury was retired, argument heard, and the court, recalling its previous ruling, sustained the objection, and the question was not answered. Nonetheless a bill was reserved on the part of both defendants.

Counsel for defendants contend: (1) That, since a question putting at issue the character of the accused before he had offered evidence of good character was asked, the trial judge should not have overruled the objection in the first instance; (2) that the effect on the jury, composed of ordinary individuals, educated and uneducated, taken from every walk of life, did not work to the advantage of the accused; and, (3) through the asking of the question in the hope of showing bad character of a witness other than the defendant, the state succeeded in getting to the jury, by this artifice, what it could not have gotten to them directly.

The trial judge shows that at first he overruled defendant's objection to the question for the reason that in his opinion it was·

competent, at least for the purpose of testing the accuracy of the memory of the witness, she having testified that she remembered the night of the alleged offense by associating it with her brother's arrest, but that, in the course of argument, after the jury had retired, and out of their presence and hearing, counsel for defendants having stated the defendant in question had been arrested many times for various offenses, he reconsidered his ruling and sustained the objection. The trial judge assigns as his reason for changing his ruling that, while under ordinary circumstances the question would be competent, in so far as the instant situation was concerned it was preferable not to permit the question to be answered, because, if the jury were informed in the manner proposed that the said defendant had been often arrested for other offenses, the tendency of such evidence would be to prejudice the jury against him, and very probably cause them to lose sight of the main issue involving the guilt or innocence of the accused of the offense for which he was actually being tried.

Pretermitting the inquiry as to whether or not the question was a proper one to test the accuracy of the memory of the witness, since it was not answered, we fail to see how any injury was suffered by the defendants. Defendant Kelly obviously was not prejudiced, since he was without interest in the question or answer, had one been made. The character of defendant Scara was not put at issue by the unanswered question, nor are we able to appreciate in what manner it could have affected the jury to his injury, unless we should be willing to assume which, of course, we are not willing to do, that the members of the jury were so devoid of ordinary understanding as to be influenced by the mere asking of the question.

In State v. Curtis, 138 La. 911, on page 916, 70 South. 878, on page 880, this court, in passing upon a similar issue, said:

"The prosecuting officer asked defendant on cross-examination the question:

"'After you had put in 60 days in jail here for carrying a concealed weapon, did you not beat a negro named Carr, with a pistol?'

"To which it was objected:

"'That, the accused not having attempted to show that he possessed a good character, it was incompetent for the district attorney to establish that he had a bad one; that it was misconduct on the part of the district attorney to ask the question.'

"The objection having been properly sustained, the question was not answered, and we think it would be doing an injustice to the intelligence of any jury to assume that they allowed the mere fact that an improper question was propounded to operate to the prejudice of the defendant."

We are unable to discover any reversible error in the record. Judgment affirmed.